UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARC M. SUSSELMAN,

        Plaintiff,                Civil Action No. 20-cv-12278
                                      HON. BERNARD A. FRIEDMAN

vs.

WASHTENAW COUNTY
SHERIFF'S OFFICE, *et al.*,

        Defendants.

_____/

## OPINION AND ORDER GRANTING THE WASHTENAW DEFENDANTS' CORRECTED MOTION TO DISMISS THE COMPLAINT AND GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUR-REPLY

I.    Introduction

Attorney Marc M. Susselman commenced this 42 U.S.C. § 1983 action against Washtenaw County, the Washtenaw County Sheriff's Office, and Deputy Sheriff Jonathan King (collectively, the "Washtenaw Defendants") alleging they violated his federal constitutional rights during a state court criminal proceeding initiated against him for disobeying Deputy King's traffic instructions.

Before the Court is the Washtenaw Defendants' corrected motion to dismiss the complaint. (ECF No. 40). Susselman responded. (ECF No. 43). The Washenaw Defendants filed a reply. (ECF No. 45). Susselman then filed a motion for leave to

file a sur-reply. (ECF No. 46).   The Court will decide the motions without oral argument pursuant to E.D. Mich. LR 7.1(f)(2).   For the following reasons, the Court shall (1) grant the Washtenaw Defendants' corrected motion to dismiss the complaint, and (2) grant Susselman's motion for leave to file a sur-reply.

II.    Background

   A.    *Factual History*

Susselman was driving eastbound on Ann Arbor Road on the afternoon of February 1, 2020, when he saw a Washtenaw County Sheriff's patrol car "parked horizontally across the eastbound lane, with its lights flashing." (ECF No. 33, PageID.597, ¶¶ 9-10, 12).   The cruiser blocked the entire eastbound lane while the westbound lane remained open. (*Id.*).   Susselman did not observe "any flares, traffic cones, or barricades of any kind in the vicinity of the patrol car." (*Id.*).   There did not appear to be an officer directing traffic. (*Id.*, ¶ 13).

After checking for oncoming vehicles, Susselman pulled into the westbound lane and drove past the cruiser. (*Id.*, ¶ 14).   He then noticed Deputy King running towards his car in the westbound lane, waving his arms. (*Id.*, ¶ 15).   The officer approached the driver's side window, informed Susselman that "he had entered the scene of a fatal accident," and said that he was issuing Susselman a ticket for

avoiding an emergency vehicle with its lights flashing, as well as entering a crime scene.[1] (*Id.*, ¶ 16).

Although Susselman claims that he initially spoke with Deputy King "in a civil tone," he began arguing with the officer, "yelling at him that he had been negligent for failing to block the entire road with his vehicle and failing to put down any barricades to alert motorists" of the accident ahead. (*Id.*, ¶¶ 16, 18-19).  Deputy King eventually permitted Susselman to take pictures of the officer's cruiser, its proximity to Susselman's car, and the surrounding roadway. (*Id.*, ¶ 20).  When he finished, King's partner, Deputy Briant Webb, handed Susselman a ticket for disobeying a police officer while directing the flow of traffic and instructed "him to leave." (*Id.*, ¶¶ 20-21; PageID.620).

Susselman pled not guilty to the charge and requested a formal hearing in state district court. (*Id.*, ¶ 23).  He drafted a letter to Superior Township prosecuting attorney, Jameel Williams, explaining what had happened and requesting that Williams move to dismiss the ticket. (*Id.*, ¶ 27; PageID.629-31).  Williams agreed to dismiss the charge "without costs on the People's motion" and informed Susselman that an impending hearing on the ticket "will be cancelled." (*Id.*, ¶¶ 28, 30-31;

---

[1] There are countless reasons why an unattended emergency vehicle, with flashing lights, would block a roadway in the manner Susselman describes.  An approaching motorist should exercise the utmost caution – along with a healthy dose of common sense – and refrain from venturing past the emergency vehicle into unknown and potentially dangerous circumstances.

PageID.633, 637).  The saga could very well have ended when the state district court dismissed the ticket on August 4, 2020 – unfortunately, it didn't. (*Id.*, PageID.504, ¶ 42; PageID.657).

Prior to the ticket's dismissal, Williams emailed Deputy King on July 29, 2020, expressing his concern that "Susselman makes some valid points [in his defense], and I'm afraid he may be correct with regards to the Failed Yield charge." Williams suggested that:

> it appears the appropriate charge for Mr. Susselman would be M.C.L. 257.602 Failure to Comply with Orders or Directions of Police Officers, . . . [p]rocedurally, I assume we would agree to dismiss the original charge (make him think he is a badass and won something) and then issue the new ticket under MCL 257.602. . . . I want to make sure that we have done everything correct within our control to get the outcome that we deserve. Does that make sense to you?

(ECF No. 33, PageID.679).  Deputy King agreed to the plan and confirmed in a July 31, 2020 email that "[t]he new citation will be sent [to Susselman] via certified mail this morning." (*Id.*, PageID.677-78).

Susselman received the second ticket through certified mail on August 6, 2020. (*Id.*, ¶ 32; PageID.640).  Like the previous one, the second ticket charged him with disobeying a police officer while directing the flow of traffic.  Except this time the ticket misstated the date and time the incident occurred, creating a discrepancy of nearly six months. (*Id.*, PageID.602, ¶¶ 35-37).  Deputy King wrote in the ticket's "remarks" that the "vehicle went around patrol vehicle parked in the middle of the

4

road with its lights on during a[n] injury accident investigation.  Ticket was rewritten per PAO [prosecuting attorney's office] then mailed to subject." (*Id.*, PageID.640). Susselman again pled not guilty, requested a formal hearing, and moved to dismiss the ticket for lack of probable cause. (*Id.*, PageID.603-04, ¶¶ 40, 47; PageID.650, 652).

At the motion hearing, the state district court permitted Williams to "amend the ticket back to the date and time of the original ticket" after concluding that the information on the second ticket "had been automatically generated by the court's computer system." (*Id.*, PageID.605, ¶ 49).  And at a subsequent hearing, the court ultimately denied Susselman's motion to dismiss, concluding that sufficient probable cause existed to support the charge. (*Id.*, PageID.605-06, ¶ 50; PageID.664-74).  Susselman appealed the decision to the Washtenaw County Circuit Court without opposition. (*Id.*, PageID.605-07, ¶¶ 50, 54).

On August 20, 2021, the circuit court issued an opinion and order reversing the state district court, granting Susselman's motion, and dismissing the second ticket. (*Id.*, PageID.607, ¶ 54; PageID.681-82).  The prosecuting attorney's office declined to appeal. (*Id.*, PageID.607, ¶ 54).

## B.    *Procedural History*

Susselman filed this lawsuit on August 21, 2020. (ECF No. 1).  The second amended complaint ("SAC") asserts that Deputy King violated his First Amendment

rights to free speech (Count I) and to petition the government (Count II), his Fourteenth Amendment rights to procedural and substantive due process (Counts V & VI),[2] as well as state law claims for malicious prosecution (Count IX) and intentional infliction of emotional distress (Count X). The SAC further alleges that Deputy King conspired with Superior Township to violate Sussleman's constitutional rights and it includes a municipal liability claim against the Washtenaw County Sheriff's Office and Washtenaw County.[3] The Washtenaw Defendants now move to dismiss the claims leveled against them. (ECF No. 40).

III.   Legal Standards

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th

---

[2] Because Susselman waived the procedural due process claim against Deputy King (Count V) that cause of action is dismissed. (ECF No. 43, PageID.1014 n.7).

[3] The SAC asserts several claims against Superior Township, seeking to hold it responsible for Williams's actions as the Township's prosecuting attorney. The Washtenaw Defendants' motion does not address the Township's liability. So neither will this opinion and order.

Cir. 2010) (quotation omitted).  The Court may consider "exhibits attached to the complaint" to decide the motion. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

IV.    Analysis

    *A.    Violation of the First Amendment's Free Speech Clause (Count I)*

The SAC's first cause of action – the First Amendment free speech retaliation claim – alleges that Deputy King issued the second ticket because Susselman "shouted at" him during their February 1, 2020 altercation. (ECF No. 33, PageID.608-09, ¶ 62).

To plead this claim, Susselman must plausibly show (1) that the First Amendment protects his speech, (2) that he suffered an injury that would deter a person of "ordinary firmness" from continuing to speak out, and (3) that Deputy King's actions were motivated at least in part by Susselman's speech. *Kesterson v. Kent State Univ.*, 967 F.3d 519, 525 (6th Cir. 2020).

Assuming the SAC plausibly establishes the first two elements, Susselman's own allegations demonstrate that Deputy King issued the second ticket solely at *Williams's* behest, not because of any personal animus towards Susselman.

According to their July 29, 2020 email, Williams asked Deputy King to issue the second ticket because "it appears the appropriate charge for Mr. Susselman would be M.C.L. 257.602 Failure to Comply with Orders or Directions of Police

Officers." (ECF No. 33, PageID.678-79).    Williams then proposed that "[p]rocedurally, I assume we would agree to dismiss the original charge [failure to yield] . . . and then issue the new ticket under MCL 257.602 [because] I want to make sure that we have done everything correct within our control to get the outcome that we deserve." (*Id.*, PageID.679).

Two days later, Deputy King confirmed that "the new citation will be sent via certified mail [to Susselman] this morning." (*Id.*, PageID.677).  And he specifically indicated on the second ticket that it "was *rewritten per PAO* [prosecuting attorney's office] then mailed to subject." (*Id.*, PageID.640) (emphasis added).

Viewing the documentary evidence in Susselman's favor, none of the SAC's factual allegations suggest that Deputy King issued the second ticket to retaliate against Susselman for yelling at him during their February 1, 2020 encounter. Consequently, the SAC falls short of plausibly demonstrating that Deputy King's actions were motivated at least in part by Susselman's speech. *Kesterson*, 967 F.3d at 525.

B.    *Violation of the First Amendment's Petition Clause (Count II)*

Susselman alleges in a similar vein that Deputy King violated his First Amendment right to petition the government because the officer issued the second ticket in retaliation for Susselman's successful defense against the first citation. (ECF No. 33, PageID.609, ¶ 66).  The First Amendment forbids state actors from

"abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I.  Today, the Petition Clause encompasses "the submission of complaints and criticisms to nonlegislative and nonjudicial public agencies like a police department." *Gable v. Lewis*, 201 F.3d 769, 771 (6th Cir. 2000).

Susselman presupposes that mounting his criminal defense against the first citation is a form of petitioning the government. (ECF No. 33, PageID.609, ¶ 65). The Sixth Circuit Court of Appeals expressly rejected this view in *Peffer v. Thompson*, 754 F. App'x 316, 319 (6th Cir. 2018).  In that case, the Sixth Circuit found no authorities holding "that the right to access courts under the Petition Clause of the First Amendment extends to a defendant's actions in a criminal proceeding." *Id.*  And like the defendants in *Peffer*, Susselman failed to locate any himself.  The right to petition claim, therefore, cannot withstand Rule 12(b)(6) dismissal.

C.    *Violation of Substantive Due Process (Count VI)*

Susselman next asserts that Deputy King deprived him of substantive due process when the officer issued the second ticket without probable cause. (ECF No. 33, PageID.613, ¶¶ 78-79).  This claim faces two insurmountable obstacles.

To begin with, the United States Supreme Court declined to recognize this exact cause of action over 25 years ago in *Albright v. Oliver*, 510 U.S. 266 (1994). There, the Court concluded that the Fourteenth Amendment's Due Process Clause

9

does not create a substantive right "to be free from criminal prosecution except upon probable cause." *Id.* at 268; *see also Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021) (noting that *Albright* overturned earlier Sixth Circuit precedents suggesting that "defendants had a substantive-due-process right under the Fourteenth Amendment to be free from malicious prosecutions that 'shock the conscience.'"). The SAC advances the same outmoded theory that *Albright* repudiated.

Nor would Susselman prevail if he instead labeled the substantive due process claim as a Fourth Amendment malicious prosecution claim. At the pleading stage, malicious prosecution requires plausible allegations that (1) the defendant "made, influenced, or participated in the decision to prosecute," (2) the government lacked probable cause, (3) the proceeding caused the plaintiff to suffer a deprivation of liberty, and (4) the prosecution terminated in the plaintiff's favor. *Jones v. Clark County*, 959 F.3d 748, 756 (6th Cir. 2020).

The SAC omits any allegations that the state court proceedings against Susselman deprived him of his liberty, *i.e.*, the third prong. He was "never arrested or incarcerated, required to post bail or bond, or subjected to any travel restrictions." *Noonan v. Cty. of Oakland*, 683 F. App'x 455, 463 (6th Cir. 2017). And "despite the aggravation, financial cost, and personal humiliation" that Susselman may attribute to defending against the second ticket, none of these factors constitute "a deprivation of liberty" under the Fourth Amendment. *Id.*

10

Since the substantive due process claim finds no support in either the Supreme Court's or the Sixth Circuit's jurisprudence it must be dismissed.

D.    *Civil Conspiracy (Count VIII)*

Section 1983 civil conspiracy claims require plausible allegations of "a single plan, where each alleged coconspirator shares in the general conspiratorial objective, and an overt act committed in furtherance of the conspiracy that causes injury to the plaintiff." *Marvaso v. Sanchez*, 971 F.3d 599, 614 (6th Cir. 2020).  The plaintiff's injuries must stem from a violation of federal law when section 1983 is implicated. *Id.*

The SAC posits that Deputy King and Williams "acted in concert to violate Plaintiff's 1st Amendment and 14th Amendment procedural and substantive due process rights." (ECF No, 33, PageID.614, ¶ 84).  But Susselman already waived his procedural due process claim, and since he fails to plausibly assert that Deputy King otherwise violated his constitutional rights, the section 1983 conspiracy claim does not state a claim upon which the Court may grant relief. *See Stricker v. Twp. of Cambridge*, 710 F.3d 350, 365 (6th Cir. 2013) (affirming the dismissal of a section 1983 conspiracy claim because the plaintiff failed to plausibly allege an underlying constitutional harm).

E.   *Municipal Liability (Count VII)*

Susselman attributes Deputy King's alleged constitutional violations to the Washtenaw County Sheriff's Office and Washtenaw County through the doctrine of municipal liability. (ECF No. 33, PageID.613-14, ¶ 82).

Municipalities may be held accountable under section 1983 only where their policies or customs cause the alleged constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).   "Municipal liability may attach for policies promulgated by the official vested with final policymaking authority for the municipality." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).

For his part, Susselman neglects to pinpoint the policies, customs, or established practices that violated his constitutional rights. *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 557 (6th Cir. 2003) (affirming the dismissal of a municipal liability claim where the plaintiff failed to "allege any facts linking the conduct of individual officers to a policy of the City of Richmond or its police department."). The SAC fails to identify the final policymaker(s) who purportedly authorized Deputy King to include "fabricated and perjured statements" in the second ticket. (ECF No. 33, PageID.613-14, ¶ 82); *Mills v. County of Lapeer*, 498 F. App'x 507, 513 (6th Cir. 2012) (upholding the dismissal of a municipal liability claim where the plaintiff could not identify the final policymaker)   And the Court already concluded that none of Deputy King's individual actions ran afoul of the federal constitution.

*Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) ("There can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act."). For all these reasons, Susselman cannot proceed with his municipal liability claim against the Washtenaw County Sheriff's Office and Washtenaw County.[4]

F.    *Malicious Prosecution (Count IX)*

To state a plausible claim for malicious prosecution under Michigan law, the plaintiff must allege that (1) the defendant initiated a criminal prosecution against him, (2) the criminal proceedings terminated in his favor, (3) the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice. *Walsh v. Taylor*, 263 Mich. App. 618, 632-33 (2004).

Any police officer, though, "who makes a full and fair disclosure to the prosecutor is not subject to an action for malicious prosecution." *Payton v. City of*

---

[4] The Washtenaw Defendants overlooked yet another reason why the municipal liability claim against the Washtenaw County Sheriff's Office lacks merit. "In Michigan, county sheriff's departments . . . are not legal entities capable of being sued." *Desandre v. Cty. of Oscoda*, No. 20-12209, 2021 U.S. Dist. LEXIS 162432, at *18 (E.D. Mich. Aug. 27, 2021) (cleaned up); *see also Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that "the Sheriff's Department is not a legal entity subject to suit"); *Hughson v. County of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988) (same). The appropriate municipal party is Washtenaw County itself. *Nallani v. Wayne County*, 665 F. App'x 498, 512 (6th Cir. 2016) (holding that "a suit against a county sheriff in his or her official capacity is nothing more than a suit against the county itself") (internal quotation marks omitted).

*Detroit*, 211 Mich. App. 375, 395 (1995).  Police officers may be held liable for malicious prosecution "only" where they "knowingly swear to false facts in a complaint, without which there is no probable cause." *Id.* (cleaned up).

Susselman points to two "fabrications" in the second ticket from which he asks the Court to infer that Deputy King issued the citation with malice: (1) the incorrect date and time of the incident, and (2) Deputy King's statement that his cruiser was parked "in the middle of the road," which purportedly conflicts with Susselman's photograph depicting the vehicle "parked in the middle of the eastbound lane" with "the westbound lane entirely open." (ECF No. 33, PageID.602, ¶ 34; PageID.618).  Neither of these inaccuracies plausibly demonstrate that Deputy King lied about the circumstances of his February 1, 2020 encounter with Susselman.

Regarding the mistaken timeframe, the state district court permitted Williams to orally amend the second ticket after finding that the date and time "had been automatically generated by the court's computer system and therefore Deputy King had not committed perjury." (ECF No. 33, PageID.605, ¶ 49).  And because the state district court already decided this question, the Court lacks the authority to disturb its determination. *See Hancock v. Miller*, 852 F. App'x 914, 920 (6th Cir. 2021) (stating that the *Rooker-Feldman* doctrine precludes "a lower federal court" from reviewing "a state court order").

More importantly, due to the six-month disparity between February 1 (the actual date of Susselman's altercation with Deputy King) and July 31 (the second ticket's incorrect date), it is implausible that Deputy King would perjure himself, and jeopardize his law enforcement career, by subscribing to the patent falsehood that Susselman was somehow involved in two identical incidents, with the same officers, at the same location, only months apart. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that the plaintiff fails to state a claim "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct").

Even Susselman himself acknowledged in an August 27, 2020 letter to Williams:

> Deputy King has falsely alleged that the events which are the basis of the new ticket occurred on July 31, 2020, at 6:58 A.M. Deputy King has thus claimed that I committed the same traffic violation on two different days, at two different times, six months apart, and that he was present on both occasions investigating the same traffic accident. The probability of such a coincidence happening in this universe, rather than in a parallel universe, is infinitesimal.

(ECF No. 33, PageID.661).

Susselman's belief that Deputy King committed perjury by conjuring up such a far-fetched, demonstrably false narrative is just as unlikely. *See Illumina, Inc. v. BGI Genomics Co.*, No. 19-03770, 2020 U.S. Dist. LEXIS 19216, at \*16-17 (N.D. Cal. Feb. 5, 2020) (holding that the defendant's assertion that the plaintiff's "attorneys and their expert would knowingly make patently false statements about

prior art that were contradicted by materials they cited and that could be readily exposed by the opposing party" was "implausible").

As for the second "fabrication," whether Deputy King actually parked his cruiser "in the middle of the road" amounts to a quibble over semantics.  Susselman's photograph shows the patrol vehicle located perpendicular to the flow of traffic, entirely blocking the eastbound lane of Ann Arbor Road, with a portion of the westbound lane left open. (ECF No. 33, PageID.618).  Although the cruiser is not precisely centered, Deputy King's colloquial use of the phrase "in the middle of the road" is accurate enough that it cannot plausibly be construed as untrue, let alone knowingly false. *Payton*, 211 Mich. App. at 395.

Because Susselman does not allege that Deputy King lied about any other aspect of their encounter, he cannot plausibly establish that the officer failed to make a "full and fair disclosure" on the second ticket. *Id.*  As a result, the malicious prosecution claim is dismissed.

### G.   *Intentional Infliction of Emotional Distress (Count X)*

To state a plausible claim for intentional infliction of emotional distress under Michigan law, the plaintiff must allege "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hayley v. Allstate Ins. Co.*, 262 Mich. App. 571, 577 (2004).  The purported conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible

16

bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham v. Ford*, 237 Mich. App. 670, 674 (1999).

Susselman maintains that Deputy King's issuance of the second ticket reaches this high threshold because the officer resorted to "perjured testimony in order to charge" him "with a criminal offense." (ECF NO. 33, PageID.615). Because the Court already concluded, however, that Deputy King fully and fairly disclosed his interactions with Susselman, and since the SAC relies exclusively upon threadbare conclusions that Deputy King issued the second ticket intending to cause Susselman severe emotional distress, the intentional infliction of emotion distress claim lacks the requisite plausibility to survive a motion dismiss. *See Cebulski v. Belleville*, 156 Mich. App. 190, 195 (1986) (affirming the dismissal of an intentional infliction of emotional distress claim where the complaint failed to allege that "the officer stopped and detained plaintiff for the purposes of inflicting severe emotional distress."); *Stobbe v. Parrinello*, No. 201237, 1998 Mich. App. LEXIS 825, at *7 (Mich. Ct. App. Nov. 24, 1998) (same). Accordingly,

IT IS ORDERED that the Washtenaw Defendants' corrected motion to dismiss the complaint (ECF No. 40) is granted.

IT IS FURTHER ORDERED that Deputy King, the Washtenaw County Sheriff's Office, and Washtenaw County are dismissed from this case with prejudice.

IT IS FURTHER ORDERED that Susselman's motion for leave to file a sur-reply (ECF No. 46) is granted.

s/Bernard A. Friedman

Dated:  June 21, 2022                    Bernard A. Friedman
         Detroit, Michigan              Senior United States District Judge